**In re NICOLE ENERGY SERVICES, INC., Debtor.**

No. 03–67484.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 27, 2013.

Stewart H. Cupps, Cupps & Garrison, LLC, Larry J. McClatchey, Columbus, OH, Christy Prince, Kegler, Brown, Hill & Ritter, LPA, Columbus, OH, for Larry J. McClatchey, Trustee.

Lawrence Hackett, Columbus, OH, for U.S. Trustee.

Jay W. Maynard, Worthington, OH, Grady L. Pettigrew, Jr., Law Office of Grady L. Pettigrew, Jr., Columbus, OH, Robert C. Sanders, Upper Marlboro, MD for Debtor.

*ORDER ON MOTIONS OF COLUMBIA GAS TRANSMISSION LLC FOR ORDERS DIRECTING ROBERT C. SANDERS AND FREDDIE L. FULSON TO APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

This matter is before the Court on two motions filed by Columbia Gas Transmission LLC, f/k/a Columbia Gas Transmission Corporation ("TCO"), in the Chapter 11 case of Nicole Energy Services, Inc. ("Debtor" or "NES"): (1) a motion requesting that the Court enter an order directing Robert C. Sanders ("Sanders") to "show cause why he should not be held in contempt of this Court" ("Sanders Motion") (Doc. 650) at 1; and (2) a motion requesting that the Court likewise enter an order directing Freddie L. Fulson ("Fulson") to "show cause why he [Fulson] should not be held in contempt of this Court" ("Fulson Motion") (Doc. 651) at 1.[1] In addition, TCO requests that the Court, if it holds Sanders and Fulson in contempt, also award it reasonable attorneys' fees, costs and expenses associated with prosecuting the Sanders Motion and the Fulson Motion, *see* Mem. in Supp. of Sanders Mot. at 9; Mem. in Supp. of Fulson Mot. at 9–10, and that Sanders "show cause why he should not be required to disgorge fees for attacking the orders and jurisdiction of this Court and violating his duties to the Debtor and [Larry McClatchey, the Chapter 11 trustee of NES's bankruptcy estate ('NES Trustee')]." Mem. in Supp. of Sanders Mot. at 9.

TCO filed the Sanders Motion and the Fulson Motion (collectively, "Motions") in

---

1. The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2).

response to a state court complaint ("Complaint") and amended state court complaint ("Amended Complaint") (collectively, "Complaints") brought under the Ohio Corrupt Practices Act ("OCPA") by Fulson as plaintiff (with Sanders as counsel) in the Court of Common Pleas of Franklin County, Ohio ("State Court") against defendants TCO, Columbia Gas of Ohio, Inc., Columbia Gas of Pennsylvania, Inc. and Columbia Gas of Kentucky, Inc. (collectively, "Columbia Entities").[2] TCO contends that the claims asserted in the Complaints ("Ohio RICO Claims") for harm allegedly done to NES were property of NES's bankruptcy estate and that TCO purchased those claims as part of the sale of the Debtor's assets. TCO also argues that, by filing the Complaints, Sanders and Fulson violated the Court's memorandum opinion (Doc. 453) and order ("Sale Order") (Doc. 461) approving the sale of the Debtor's assets to TCO, as well as the final decree closing the Debtor's bankruptcy case ("Final Decree") (Doc. 637).

■ Fulson clearly has no right to assert the Ohio RICO Claims. He asserted a claim for damages "in his capacity as the 100% owner of NES and NGP[,]" Compl. ¶ 125, and a claim for damages "in his capacity as the 100% owner of NES." Am. Compl. ¶ 108. As explained in the NGP Show Cause Order, the Ohio RICO Claims as they relate to harm allegedly done to NGP are, in their entirety, property of NGP's bankruptcy estate. By the same reasoning, the Ohio RICO Claims as they relate to harm allegedly done to NES ("NES Ohio RICO Claims") were in their

entirety property of NES's bankruptcy estate, and the NES Trustee had the exclusive right to assert those claims. Consistent with that right, as explained below, the NES Trustee, rather than abandoning the NES Ohio RICO Claims (as Sanders and Fulson assert), sold the NES Ohio RICO Claims to TCO.

By a motion for approval of the sale of assets (Doc. 286) ("Sale Motion"), the NES Trustee sought approval of the asset purchase agreement attached as Exhibit A to the Sale Motion ("APA"). The APA defined the assets to be sold to TCO ("Assets") to include:

> any and all claims, demands, and causes of action of NES against [the Columbia Entities] arising from the beginning of time to the date hereof, including, but not limited to, any claims of NES that are or could have been asserted by NES in the State Court Case and the Remanded Case. . . .

APA § 1.01. The NES Ohio RICO Claims fall within the APA's definition of Assets. The Court approved the Sale Motion, including the NES Trustee's sale of the Assets to TCO. *See* Sale Order §§ 1–2. Fulson accordingly has no right to assert the NES Ohio RICO Claims. Sanders and Fulson should know this, because they both were served with copies of the Sale Motion and the Sale Order, and participated in the lengthy hearing that culminated in the Sale Order. *See* Sale Mot. at 23–24; Certificate of Mailing of Sale Order (Doc. 465) at 2.

---

**2.** The Complaints are discussed in more detail in the Order Directing Freddie L. Fulson, James A. Lowe and Robert C. Sanders to Appear and Show Cause Why They Should Not Be Held in Civil Contempt, entered as Docket No. 137 in the Chapter 7 case of Nicole Gas Production, Ltd. ("NGP"), Case No. 09–52887 ("NGP Show Cause Order").

That discussion is incorporated herein by reference. A copy of the Complaint is attached as Exhibit 1 to the motion for an order to show cause filed by the Chapter 7 trustee in the NGP case, Doc. 119 in Case No. 09–52887. A copy of the Amended Complaint is attached as Exhibit B to TCO's motion to reopen NES's Chapter 11 case (Doc. 639).

In an attempt to make an end-run around the Sale Order, Sanders and Fulson raise two arguments—both of which are fallacious. First, they contend that the NES Ohio RICO Claims arose "after ... the date of the APA" and therefore were not sold to NES, Resp. of Robert Sanders to Sanders Mot. ("Sanders Resp.") (Doc. 652) at 11; Resp. of Freddie Fulson to Fulson Mot. ("Fulson Resp.") (Doc. 653) at 9, because "[t]here was no injury from the RICO violations until TCO succeeded in purchasing, and thereby extinguishing, NES's pre-APA causes of action." Sanders Resp. at 12; Fulson Resp. at 10. That argument borders on—if not crosses the line into—the frivolous. The Amended Complaint alleges that NES was injured as a result of allegedly fraudulent acts that occurred "from December 1, 1999 to September of 2002," see Am. Compl. ¶ 107(1)–(4), which was prior to the date of the commencement of NES's bankruptcy case. Assuming for the sake of argument that injury occurred to NES as a result of the Columbia Entities' actions, the injury occurred at the time those actions were taken, not at the time the NES Trustee entered into an agreement to sell the claims arising as a result of those injuries to TCO. Nor does the argument that "TCO's purchase of the [NES Ohio RICO Claims] was part of a broader pattern of conduct that violated [the OCPA]" lead to the conclusion that Fulson has a right to assert the NES Ohio RICO Claims. Even if it were true that TCO's entry into the APA violated the OCPA,[3] the claim for such a violation existed at the time that the NES Trustee and TCO entered into

the APA, and those claims therefore were sold to TCO. In short, rather than giving rise to the NES Ohio RICO Claims, the APA, and its approval in the Sale Order, effectuated a settlement of those purported claims.

 The Court, however, does not yet have a basis to hold Sanders and Fulson in contempt for filing the Complaints as they relate to NES. Sixth Circuit case law holds that "[a] litigant may be held in contempt if his adversary shows by clear and convincing evidence that he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.1987) (internal quotation marks omitted). As a bankruptcy court held in passing upon a contempt motion made under factually similar circumstances:

[T]he Settlement Order authorized the [Chapter 7 trustee ("Trustee")] to terminate the 110 Beaver Street Trust and to substitute himself as sole plaintiff in ... the civil action. It further declared that upon termination of the trust, the Trustee shall have the sole and exclusive right to take those actions necessary to dismiss the civil action on behalf of all plaintiffs. The Trustee contends that the Respondents are in contempt of the Settlement Order because they opposed and continue to oppose the Trustee's efforts in the Superior Court to substi-

---

**3.** The discussion of the Ohio RICO Claims in this order should not be construed to suggest that the Court believes that the Ohio RICO Claims have any merit. Indeed, the suggestion that TCO's entry into the APA violates the OCPA is itself a highly questionable proposition in view of the fact that, following notice to parties in interest and a lengthy evidentiary

hearing, and after finding that "[t]here was no fraud or collusion between the parties" to the APA, a federal court of competent jurisdiction approved the APA by way of a final, nonappealable order. *In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 236 (Bankr. S.D.Ohio 2008).

tute himself as sole plaintiff in the civil action and to dismiss the action.

The Court must deny the motion because the Settlement Order did not order the Respondents to do anything or to refrain from doing anything. Contempt requires an act that violates an order. Insofar as the Settlement Order did not enjoin them to act in any way, their actions, however otherwise wrongful and violative of rights of the bankruptcy estate, cannot constitute a contempt of the Settlement Order. Therefore, a separate order will enter denying the contempt motion.

*In re 110 Beaver St. P'ship,* No. 97–11104–RS, 2007 WL 2956361, at *1 (Bankr. D.Mass. Oct. 5, 2007). *See also Volvo Const. Equip. Rents, Inc. v. NRL Rentals, LLC,* No. 2:09–CV–32 JCM (LRL), 2010 WL 2757777, at *1 (D.Nev. July 12, 2010) ("Plaintiff concedes that the writ and subsequent expansions of the writ do not identify or expressly prohibit the complained conduct of the defendants.... Accordingly, defendants are not in contempt because there was no order specifically requiring them to do, or refrain from doing anything."). Here, the Sale Order did not direct Sanders or Fulson to do anything or to refrain from doing anything.

Nor did the Final Decree contain a definite and specific order requiring Sanders and Fulson to refrain from filing the Complaints. The Final Decree enjoined the pursuit of actions "against [NES] or its property." Final Decree ¶ 6. Following the entry of the Sale Order, the NES Ohio RICO Claims were no longer the property of NES. Put simply, the Complaints did not initiate actions against NES or its property; rather, they initiated actions against the Columbia Entities. The Sale Order or other order of the Court could have included an injunction that would have enjoined Sanders and Fulson from pursuing claims such as the NES Ohio RICO Claims. *See, e.g., In re Hunt,* 754 F.2d 1290, 1294 (5th Cir.1985) ("Thus, under the Master Settlement Agreement, Hunt no longer has any rights in the Estate or any interest in the administration of the Estate. Even if the district court had not issued the injunction, Hunt could not assert his claims in state court because he has relinquished all of the alleged rights he seeks to protect. The injunction simply serves to coerce Hunt into obeying the terms of the Master Settlement Agreement, and together the injunction and the Agreement bar Hun's federal and state court actions."). But neither the Sale Order nor the Final Decree contained a definite and specific order of the Court requiring Sanders or Fulson to refrain from filing the Complaints. Thus, under the standard articulated by the Sixth Circuit in *Cincinnati Bronze,* the imposition of a contempt sanction against Sanders and/or Fulson would not be appropriate under the circumstances.

For the reasons stated above, the Motions are **DENIED.** Again, because the NES Ohio RICO Claims were sold to TCO, Sanders and Fulson had no right to file the Complaints, and the Complaints should be dismissed. Thus, the denial of the Motions is without prejudice to the refiling of a motion to show cause in the event that TCO and/or the NES Trustee obtain from the Court an order requiring Sanders and Fulson to refrain from continuing the action or filing other similar actions in the State Court.

**IT IS SO ORDERED.**